THE ESTATE OF ERNST UHLICH *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed December 22, 1906.*

1. SPECIAL ASSESSMENTS—*when dimensions of a cinder foundation are sufficiently clear.* An ordinance for a combined curb and gutter and concrete gutter-flags which requires that they shall be constructed upon a bed of cinders six inches in depth sufficiently shows the other dimensions of the cinder foundation, where other provisions of the ordinance and the engineer's estimate give the width and length of the combined curb and gutter and gutter-flags.

2. SAME—*when failure to assess street railway company does not invalidate assessment.* The fact that a street railway company has the right, under an ordinance, to lay a single or double track, in its .discretion, upon a street, and is required by the ordinance to keep paved eight feet in width for single track and sixteen feet for double track in the center of the streets "where its tracks shall be laid," does not render invalid an ordinance assessing the entire cost of paving the street to the abutting property, where no tracks have been laid at the time the assessment is made. (*Sawyer* v. *City of Chicago,* 183 Ill. 57, distinguished.)

APPEAL from the County Court of Cook county; the Hon. DWIGHT C. HAVEN, Judge, presiding.

HUFF & COOK, for appellants.

CHARLES H. MITCHELL, and JOHN M. O'CONNOR, (JAMES HAMILTON LEWIS, Corporation Counsel, of counsel,) for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

The city of Chicago filed its petition in the county court of Cook county for the confirmation of a special assessment levied to defray the cost of curbing, grading, and paving with asphalt, Dearborn street from Twenty-second street to Twenty-sixth street, in the city of Chicago. The estate of Ernst Uhlich, and certain other owners of land assessed

for the improvement, filed objections to the confirmation of the assessment. These objections were overruled, a judgment of confirmation was entered, and the objectors thereupon appealed to this court.

The ordinance for the improvement was passed by the city council of the city of Chicago on June 22, 1904. Its validity is attacked upon the ground that it fails to specify the dimensions of the foundation of cinders required by the ordinance to be placed under the combined curb and gutter and gutter-flags which are to be constructed on each side of the roadway. The ordinance provides that where curb walls now exist along the line of the improvement there shall be constructed, adjoining the roadway face thereof, granite concrete gutter-flags eighteen inches in width and five inches in thickness; that where no such curb walls exist there shall be constructed on each side of the roadway a granite combined curb and gutter, the curb to be seven inches in thickness, and the height to vary from seventeen inches at catch-basin inlets to nine inches at the summits, and the gutter-flags to be eighteen inches in width and five inches in thickness, and that the combined curb and gutter and gutter-flags shall be constructed upon a bed of cinders six inches in depth. The contention of appellants is, that as only one dimension of the cinder foundation, viz., the depth, is given, no intelligent estimate can be made of the cost of constructing this foundation, as it cannot be determined from the provisions of the ordinance what quantity of cinders will be required. In our judgment such a conclusion can only be reached by ignoring those provisions of the ordinance which give the dimensions for the combined curb and gutter and gutter-flags, and when such provisions are considered in connection with the provision providing for the cinder foundation, the dimensions for that foundation are sufficiently certain to determine therefrom the quantity of cinders required. From the estimate of the engineer it appears that there are 204 lineal feet of curb walls now in place

along the sides of the roadway, and that there are 4687 lineal feet along the sides of the roadway without curb walls. The ordinance provides that where curb walls are now in place there shall be constructed, adjoining the roadway face thereof, granite concrete gutter-flags eighteen inches in width. It is apparent that the foundation of cinders to be placed under these gutter-flags must necessarily be 204 feet in length, eighteen inches in width and six inches in depth. Where curb walls do not now exist, the ordinance provides that there shall be constructed a combined curb and gutter, the curb to be seven inches in thickness and the gutter-flags eighteen inches in width, making the total width of the combined curb and gutter twenty-five inches. The foundation of cinders to be placed under this portion of the work will, therefore, be 4687 feet in length, twenty-five inches in width· and six inches in depth. From the dimensions thus obtained the quantity of cinders to be used in the foundation becomes a mere matter of arithmetical calculation.

It follows that the first ground urged for reversal is without merit.

Appellants' second and last contention is, that the ordinance is unreasonable, oppressive and void, because it provides for an assessment against the abutting property for the cost of the entire improvement, when, as it is claimed, an agreement exists between the city of Chicago and the General Electric Railway Company whereby said company is required to pave the center of said street between the termini of the proposed improvement. The contention that such an agreement exists is based upon an ordinance which was passed by the city of Chicago on January 13, 1896, and which granted to the General Electric Railway Company a franchise to construct and operate, for the term of twenty years, a single or double track street railway over and along certain streets in the city of Chicago, including Dearborn street between the limits of the proposed improvement, and which imposed certain duties and obligations upon that com-

pany. The ordinance was duly accepted by the railway company on March 7, 1896. It required the railway company to complete at least three miles of tracks within one year from the passage of the ordinance and to have the entire line completed and in operation within eighteen months, but contained a proviso that any time during which the work, or any part or portion thereof, might be enjoined or restrained by order of court should not be counted or included within said time, and that any time during which the right of the railway company to use or enjoy the rights and privileges granted by the ordinance, or any part or portion thereof, might be in question in any legal proceeding in any court should be excluded from the limitation as to the time for completion fixed by the ordinance.

It was stipulated upon the trial in the county court, that prior to the expiration of the terms of the ordinance an application was made to one of the circuit courts of the United States, by the Chicago, Indianapolis and Louisville Railway Company, for an injunction to restrain the General Electric Railway Company from constructing and operating a street railway on Custom House place from Fourteenth street to Polk street, and that a temporary restraining order was issued in accordance with that application; that the temporary injunction is still in force, and that the suit involves the validity of the ordinance granting permission to the General Electric Railway Company to construct and operate a street railway in Dearborn street between Twenty-second street and Twenty-sixth street, and is still pending in the United States Circuit Court. The evidence shows that there are no street railway tracks on Dearborn street between Twenty-second street and Twenty-sixth street, and that the city of Chicago has taken no action to forfeit the rights granted to the General Electric Railway Company.

We do not deem it necessary in this case to decide whether the fact that the railway company was enjoined from constructing a street railway in Custom House place

extended the time fixed by the ordinance for constructing the railway in the other streets over which the franchise extended. In our opinion it is immaterial, so far as a disposition of this case is concerned, whether the railway company still has the right to construct and operate a street railway in Dearborn street between Twenty-second street and Twenty-sixth street, or whether such right has been lost by the lapse of time. Appellants' argument, however, is predicated upon the theory that such right still exists, and in considering the question presented by this record we shall proceed upon the assumption that the railway company still has the right to construct a street railway over and upon Dearborn street between the termini of the improvement.

The provision of the ordinance of January 13, 1896, which is relied upon by appellants to show an agreement on the part of the railway company to pave a portion of the roadway in controversy, is as follows: "The said General Electric Railway Company shall keep paved and in good repair eight feet in width for single track and sixteen feet in width for double track in the center of the streets where its track shall be laid."

Appellants contend that by reason of the provision of the ordinance just quoted, upon the acceptance by the General Electric Railway Company of that ordinance that company became bound to pave a strip in the center of all streets over and upon which the company was, by the ordinance, given the right to construct and operate a street railway, and that it could be required to pave such strip even though no tracks had been laid in the particular street sought to be improved.

In our judgment the provision that the railway company shall keep paved a strip in the center of streets "where its tracks shall be laid" does not require the railway company to pave any portion of any street before the time when it proceeds to lay its tracks in that street. We are confirmed

in this view by the fact that the railway company is required to pave a strip eight feet in width where it uses a single track and a strip sixteen feet in width where it constructs a double track railway. It is by the ordinance given a discretion whether to construct a single track or a double track railway. It is manifest that before it exercises that discretion it would be impossible to determine what portion of the roadway the railway company is, by the ordinance, required to pave. We are therefore of the opinion that the railway company is not obligated to pave any portion of the streets over which it was granted a franchise to construct and operate a street railroad until it proceeds to lay its tracks in the street or streets sought to be improved, and that the fact that it holds such a franchise in a particular street does not render an ordinance void which provides for an assessment against abutting property for the entire cost of paving such street.

The case of *Sawyer* v. *City of Chicago,* 183 Ill. 57, which is relied upon by appellants, is dissimilar from the one at bar. There the ordinance required the railway company to keep sixteen feet in width of Kensington avenue in repair during all the time for which the privilege to construct and operate a railway therein was granted, and provided that when a new improvement should be ordered by the city council the railway company should make such improvement for the width of sixteen feet. The railway company constructed its tracks in Kensington avenue and operated cars thereon for several years. While a sewer was being built in the avenue the tracks were taken up, and had not been re-laid at the time of the hearing upon the petition for the confirmation of an assessment against abutting property for the entire cost of paving the avenue. This court held that the cost of paving a strip sixteen feet in width should not have been assessed against the abutting property because the railway company was bound, by its acceptance of the ordinance, to pave such strip. It will be observed that in the

*Sawyer case* the railway company obligated itself to improve a strip in Kensington avenue whenever a new improvement should be ordered in that avenue, without regard to whether tracks should be laid in that portion of the avenue sought to be improved, while in the case at bar the railway company only agreed to keep paved a strip in the center of the streets "where its tracks shall be laid." It is to be further noticed that in the *Sawyer case* the width of the strip to be paved by the railway company was definitely fixed by the ordinance, and did not depend upon any action of the railway company to make it certain what portion of the work was to be done or paid for by that company, while in the case at bar the width of the strip to be paved by the railway company is made to depend upon the action of the railway company in constructing a single track or a double track railway, and cannot be definitely ascertained until after the tracks have been laid.

The decision in the other cases cited by appellants are based upon reasons which are wholly inapplicable to the case now before us.

The judgment of the county court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTER took no part in the decision of this case.